IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| FREDERICK BARKER, | ] | Case No.  15-cv-595 |
| | ] | |
| Applicant | ] | |
| | ] | |
| v. | ] | |
| | ] | **Petition for habeas corpus** |
| **RICK RAEMISCH** Executive Director | ] | |
| Colorado Dept of Corrections | ] | **Pursuant to 28 U.S.C.** |
| **TRAVIS TRANNI**, | ] | **section 2254** |
| Warden, Colorado | ] | |
| State Penitentiary | ] | |
| **CYNTHIA COFFMAN**, Attorney | ] | |
| General, State of Colorado, | ] | |
| | ] | |
| Respondents. | ] | |

_____

**APPLICATION FOR A WRIT OF HABEAS CORPUS**
**PURSUANT TO 28 U.S.C. § 2254**
**BY A PERSON IN STATE CUSTODY**
_____


The Applicant, Frederick Barker, by and through his counsel, hereby

submits his Application for Writ of Habeas Corpus.

## I.     JURISDICTION AND CONVICTION UNDER ATTACK

The Petition is filed pursuant to 18 U.S.C. section 2244(d)(1), and is timely.

1.     Mr. Barker challenges his convictions in Denver District Court case numbers 2003CR286 and 287.   Mr. Barker was convicted of two counts of felony murder, one count of second degree murder and two counts of aggravated robbery, and he was sentenced to the mandatory life without parole.   He is currently incarcerated at the honors unit at the Colorado State Penitentiary.

2.     Mr. Barker appealed his convictions in (05CA144) and the Court of Appeals affirmed the conviction in an unpublished opinion on February 21, 2008. The Colorado Supreme Court denied Mr. Barker's Petition for Writ of Certiorari on June 23, 2008.   This means that a Petition for Writ of Cert to SCOTUS would have been due on Monday September 22, 2008.

3.     Mr. Barker filed a pro se Rule 35(c) motion on April 16, 2009, which was denied without a hearing.   He timely appealed this ruling but the Court of Appeals affirmed and the Colorado Supreme Court denied his Petition for Writ of Certiorari on October 14, 2014.

4.     The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires a state prisoner seeking federal habeas relief to file his petition within one year after his state conviction becomes final.   For purposes of the AEDPA, the state conviction becomes final 90 days after denial of the Petition for Writ of Certiorari by the Colorado Supreme Court if no Petition for Writ of Certiorari was

filed in the United States Supreme Court.  *Locke v. Saffle*, 237 F.3d 1269, 1273 (10th Cir. 2001); *see also Fleming v. Evans*, 481 F.3d 1249, 1257 (10th Cir. 2007).

5.      Therefore, Mr. Barker's one year period commenced on Monday September 22, 2008.

6.      A "properly filed application for state post-conviction or other collateral review" tolls the period. 28 U.S.C. § 2244(d)(2).  A properly filed motion under either Colo. R. Crim. P. 35(b) or 35(c) tolls the limitations period. *Robinson v. Golder,* 443 F.3d 718, 721 (10th Cir. 2006).  The one year 2254 clock was tolled on April 16, 2009 and recommenced on October 14, 2014 when the Colorado Supreme Court ruled.  Therefore, this Petition is timely filed.[1]

## II.    FACTS

On August 12, 2002, a manager of the Subway sandwich shop, at Quince and Colfax Avenue where Mr. Barker had been employed, was found shot to death inside the restaurant.  All the cash from the register had been removed, and Mr. Barker's palm print was later matched to a print found in the restaurant.

On August 26, 2002, a cab with a dead driver was found parked in the middle of the street near Mr. Barker's home at 39th and Olive Street.  The cab driver was dead of a gunshot would.  Mr. Barker's home was searched, and the police found bullets of the same caliber used in the restaurant shooting, but did not find a gun.  Mr. Barker was taken into custody and he confessed to both murders

---

[1] Day 365 was either March 21 or March 22, which were both weekend days, so this petition is timely filed on March 23, 2015.

after a lengthy interrogation.

In 03CR286, the Subway restaurant case, the teen-aged Mr. Barker was charged with F1 murder, felony murder and aggravated robbery; the case was bound over on January 23, 2003.   In 03CR287, the cab case, Mr. Barker was also charged with F1 murder, felony murder and aggravated robbery; and the case was also bound over on January 23, 2003.  The cases were consolidated for one trial. After a jury trial, Mr. Barker was convicted of F2 murder, felony murder and aggravated murder in the Subway case.  In the cab case, Mr. Barker was acquitted of both first and second degree murder, but convicted of felony murder and aggravated robbery.  Mr. Barker's theory of the case was that he did not kill either victim and was at his house, where he lived with his father and brother, on the dates and times of the murders.  His position is that he was coerced into giving false confessions to these crimes, after repeated and intense questioning by the police on October 29 and 30, 2003.  The eighteen year old and naive Mr. Barker was terrified and repeatedly asked to talk to his father, but these requests were ignored and he finally told the police what they wanted to hear.

On December 4, 2004, Mr. Barker was sentenced to two consecutive LWOP sentences.

After the convictions but prior to sentencing, in both cases, on November 8, 2004, Mr. Barker filed a pro se form motion to dismiss the public defender and appoint alternate defense counsel.  The gravamen of Mr. Barker's complaint was that his appointed public defender ignored an argument that Mr. Barker's right to a speedy trial was violated when the public defender asked for a continuance on May

4

5, 2004 (and thus waiving Speedy Trial) without consulting with Mr. Barker and obtaining his consent.  On May 5, 2004, trial was reset to August 2 upon the request of trial defense counsel. Nowhere in this 22 page transcript is there any waiver of Speedy Trial by Mr. Barker.  Trial defense counsel requested the continuance because of late disclosure of documents by the prosecution, and trial defense counsel needed additional time to review these previously undisclosed documents when the District Court denied trial defense counsel's motion to dismiss for discovery sanctions.  Both the Court and trial defense counsel acknowledged that Mr. Barker objected, but Mr. Barker's Sixth Amendment Right to effective assistance of trial defense counsel took precedence over his statutory right to a speedy trial.  The Speedy Trial date was June 16, 2004, and pursuant to CRS 18-1-405(3), the Speedy Trial date was extended to November 5, 2004.  Trial was reset to August 2, 2004 over Mr. Barker's objection.  For reasons not relevant to this appeal, trial did not actually commence until September, 2004 – within the Speedy Trial date as extended over Mr. Barker's objection on May 5, 2004.  Trial defense counsel never filed a motion to dismiss pursuant to CRS 18-1-405(1) and (5).  Mr. Barker also filed a motion for a new trial, based on this same argument.

Mr. Barker appealed his conviction and sentence (05CA0144) and was represented by the Public Defender appellate division (despite his pro se motion to dismiss the public defender for conflict of interest and ineffective assistance of counsel).  This appeal was a consolidated appeal of both District Court cases.  On February 21, 2008, the Court of Appeals affirmed in an unpublished opinion, the

Colorado Supreme Court denied Mr. Barker's Petition for Writ of Certiorari on June 23, 2008 and the Mandate issued on July 9, 2008.   The issues raised on appeal were:  (1)  whether Mr. Barker's confession should have been suppressed because he did not execute a valid waiver of his right to remain silent and his right to counsel; (2) whether Mr. Barker's confession was voluntary, or due to the physical and psychological pressure exerted by the detective; (3) whether the District Court properly overruled his *Batsun v. Kentucky* challenges regarding the prosecution's peremptory challenges to two African American and two Hispanic jurors; (4) whether the District Court erred in denying his challenge for cause to a prospective juror; (5) whether the District Court's written response to a question by the jury was coercive and deprived him of his unanimous verdict; (6) whether the District Court erred by failing to investigate fully his allegations that jurors had spoken with the victims' family members; and (7) whether the District Court erred in admitting a lab report during the testimony of the prosecution's expert in firearms.  Appellate counsel failed to raise Mr. Barker's issue regarding the Speedy Trial violation.

On April 16, 2009, Mr. Barker filed a timely pro se 35(c) motion.  In his motion, Mr. Barker alleged ineffective assistance of trial defense counsel for a variety of things, in a very rambling and difficult to read pro se pleading.   In this motion, Mr. Barker raised the issue that it was ineffective assistance to not move to

sever the two cases, and that it was ineffective to counsel him to not testify. However, Mr. Barker did not understand that he probably should reiterate his prior claim of ineffective assistance of counsel for moving for a continuance rather than moving to dismiss for Speedy Trial violations.   But, this issue was still on the table, because it was not ruled on; and in fact, it remains ignored to this day.   On July 30, 2009, Mr. Barker asked the Court to stay any ruling on the Rule 35(c) motion for 20 days so that he could amend his motion and bring all his claims. However, Mr. Barker failed to file an amended Rule 35(c) motion and the District Court denied his motion without appointment of counsel and without holding a hearing on January 7, 2012.

Mr. Barker then filed a 92 page (single spaced) typed pro se motion for reconsideration on February 10, 2010.   With regard to his ineffective assistance of counsel for failing to object to the joinder of the two cases, Mr. Barker relied on *White v. People,* 8 Colo.App. 289, 297 (Colo.App. 1896) which held:   "It has always been holden with reference to felonies that only one transaction can be embraced in a single indictment. The acts done may result in the commission of several different statutory or common law crimes, but wherever the felonies are separate and distinct, and not provable by the same evidence, and have been committed at different times, so that they can in no sense be deemed to result from the same series of acts, they may not be joined in one indictment; and consequently, if several indictments be found, the court is powerless to order the

cases consolidated."

While Mr. Barker did not directly raise the ineffective assistance of counsel issue he raised on November 8, 2004 (which was still pending because it had not yet been ruled on), he did re-raise the issue that led to it:  namely that the DA withheld exculpatory evidence until the eve of trial, thus forcing Mr. Barker into the Hobbesian choice between his Sixth Amendment Right to Counsel and his right to a speedy trial.  Mr. Barker also raised ineffective assistance of counsel for failing to call an expert in voice recognition analysis.  The key piece of evidence in question is that it was Mr. Barker's voice on the recording calling for a cab – the cab driver that was then found murdered in front of his home.  Mr. Barker denied that he made the call and if his counsel had had an expert witness examine the tape, then there would have been exculpatory testimony.   Additionally, Mr. Barker raised the issue that trial defense counsel failed to comply with the statutory requirement by requesting that the two detectives mentioned in the lab report testify at his trial.  As a result of this unprofessional conduct, which fell below the standard of care,  Mr. Barker waived his right to confront these two detectives mentioned in the lab report.  If trial defense counsel had properly preserved this issue by complying with the statutory notice requirement, then Mr. Barker's case would have been reversed and remanded for a new trial.  Finally, Mr. Barker requested an evidentiary hearing and that the District Court make findings of fact

and conclusions of law. However, two days later, on February 12, 2010, the District Court denied the motion in a one sentence order.

## III.   STANDARD OF REVIEW

A state prisoner seeking federal habeas corpus relief after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), must meet the provisions of the Act. *Lindh* v. *Murphy,* 521 U.S. 320, 327,117 S. Ct. 2059 (l997); *Hain* v. *Gibson,* 287 F.3d 1224, 1229 (l0th Cir. 2002) (citing *Wallace* v. *Ward,* 191 F.3d 1235, 1240 (l0th Cir. 1999), *cert. denied,* 530 U.S. 1216 (2000)).

Under the AEDPA, a habeas petitioner in state custody is entitled to relief if the decision of the state courts resolving the claim against him "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. Section 2254(d)(l), (2); *Williams* v. *Taylor,* 529 U.S. 362, 402-03, 120 S. Ct. 1495, 1518 (2000); *see also Van Woudenberg v. Gibson,* 211 F.3d 560, 566 (l0th Cir. 2000), *cert. denied,* 531 U.S. 1161 (2001); *LaFevers v. Gibson,* 182 F.3d 705, 711 (l0th Cir. 1999).

A state court's decision is "contrary to" established federal law as determined by the Supreme Court "if the state court arrives at a conclusion

opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams,* 529 U.S. at 405-06, 120 S. Ct. at 1523; *Van Woudenberg* v. *Gibson,* 211 F.3d at 566.

A state court's decision involves an "unreasonable application of" Supreme Court precedent "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 407, 120 S. Ct. at 1513; *Van Woudenberg* at 566.

A state court's decision is "based on an unreasonable determination of the facts in light of the evidence presented" where, for example, the state court's recitation of factual circumstances supporting its ruling is unsupported by the record. *See, e.g., Paxton* v. *Ward,* 199 F.3d 1197, 1210-11 (l0th Cir. 1999) (reversing state's denial of relief under section 2254(d)(2) where state court admitted hearsay as excited utterance based on child declarant's presence at shooting, declarant's "short" possible exposure to adults who "may or may not have been talking about the shooting," and declarant not having slept between event and statement, but record showed child did not recall whether she witnessed shooting or heard about it, exposure to adults was for "a considerable period," adults did discuss the shooting, and evidence permitted inference that child had

slept between event and statement). *See also Williamson* v. *Ward,* 110 F.3d 1508, 1513 n.6, n.7 (10th Cir. 1997) (noting in pre-AEDPA case that the Court would find unreasonable determination of facts under section 2254(d)(2) of AEDPA where state court's decision was "undermined by factual assertions that are contradicted by the State's own evidence").

Though habeas relief may not be grounded in the jurisprudence of inferior federal courts, such case law is relevant to whether a state court's resolution of the federal claim is "contrary to" or "involved an unreasonable application of" Supreme Court precedent. *E.g., Bryson* v. *Ward,* 187 F.3d 1193, 1205 (l0th Cir. 1999) (citing *O'Brien* v. *DuBois,* 145 F.3d 16, 21,25 (lst Cir. 1998)).

The Sixth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."   United States Constitution amendments VI, XIV. Because the assistance of counsel is necessary to protect the fundamental right to a fair trial, the Supreme Court has long recognized that "the right to counsel is the right to the effective assistance of counsel."   *McMann* v. *Richardson,* 397 U.S. 759, 771 n.l4 (1970) (citing *Powell* v. *Alabama,* 287 U.S. 45, 57 (1932)); *Osborn* v. *Shillinger,* 861 F.2d 612,624 (10th Cir. 1988).

The constitutional right to effective assistance of counsel includes the right to have an attorney acting as a diligent and conscientious advocate. *Strickland v. Washington,* 466 U.S. 668 (1984)*; United States v. Cronic,* 466 U.S. 648 (1984)*; Powell v. Alabama,* 287 U.S. 45 (1932)*; People v. Davis,* 871 P.2d 769 (Colo. 1994).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Court created the now well-known two prong analysis for review of ineffective assistance claims. The court must first determine whether "in light of all circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id*. at 690. To be afforded relief, the accused must then show that the deficient representation somehow prejudiced the defense. *Id*. at 687. To prove prejudice, Mr. Barker must show "that counsel's errors were so serious as to deprive Mr. Barker of a fair trial, a trial whose result is reliable." *Id*. at 687. In order to establish the requisite prejudice, the accused need only show that there "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

The accused need not demonstrate that he would have been acquitted "but for" the performance of his trial counsel. To the contrary, he must only demonstrate "a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

This constitutional guarantee is violated when an attorney's performance falls below an objective standard of reasonableness as informed by prevailing professional norms, and there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland* v. *Washington,* 466 U.S. at 687-88, 694; *United States* v. *Haddock,* 12 F.3d 950 (10th Cir. 1993); *see also Williams* v. *Taylor,* 529 U.S. at 390-91; *Kimmelman* v. *Morrison,* 477 U.S. 365, 382, 106 S. Ct. 2574 (1986) (adopting *Strickland* test as appropriate standard for measuring ineffective assistance of counsel claims raised in habeas proceedings).   A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland,* 466 U.S. at 694.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the U.S. Supreme Court noted, "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. at 690-91. "Consequently, even where an attorney pursued a particular course of action for strategic reasons, courts still consider whether that course of action was objectively reasonable, notwithstanding Strickland's strong presumption in favor of upholding strategic decisions." *Bullock v. Carver*, 297 F.3d 1036 (10th Cir. 2002); *see also*

*Barker v. Gibson*, 282 F.3d 1283, 1296 (10th Cir. 2002) ("mere incantation of 'strategy' does not insulate attorney behavior from review"); *Phoenix v. Matesanz*, 233 F.3d 77, 82 n.2 (1st Cir. 2000) ("'virtually unchallengeable' does differ from 'unchallengeable,'" and the test is whether challenged acts or omissions were outside range of competent assistance); *Washington v. Hofbauer*, 228 F.3d 689, 703-04 (6th Cir. 2000) (even where challenged omission was strategic, reviewing court "cannot stop there, [but] … must also assess if this strategy was constitutionally deficient").

## IV.   ARGUMENTS – THE COLORADO COURTS' DENIALS OF MR. BARKER'S APPEALS AND POST CONVICTION MOTIONS INVOLVED AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW OR WAS BASED ON UNREASONABLE DETERMINATION OF THE FACTS IN LIGHT OF THE EVIDENCE PRESENTED IN THE STATE COURT PROCEEDING.

## A.   MR BARKER'S CONFESSION WAS ADMITTED IN VIOLATION OF HIS FIFTH AND SIX AMENDMENT RIGHTS TO REMAIN SILENT.

Mr. Barker's confession should have been suppressed because he did not execute a valid waiver of his right to remain silent and his right to counsel.  His interrogation began at 5:43 p.m., he was given a bathroom break after an hour and a·half, and upon resuming the interview, he was asked if he understood his rights and if he still wanted to talk to the detectives.  He admits he said he understood his rights and waived them at that time, and two more hours of interrogation, he was permitted to use the bathroom and given a polygraph exam.   The detectives

repeated the advisement, but contends the state courts erred in finding that he waived his Miranda rights after he returned from taking the test.  He repeatedly said he was scared and wanted to see his father.  The detectives video taped the interview, but there is an eight minute gap in the video tape, which is inexplicable

A defendant may waive the right to remain silent and the right to counsel, but such a waiver must be knowing, intelligent, and voluntary. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  The validity of a waiver is evaluated under the totality of the circumstances.  *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).  The detective's false representations concerning evidence, the physical and psychological pressure exerted by the detective upon the young and frightened Mr. Barker, and the length and the intensity of the interrogation rendered his statements involuntary.  The transcript of the video taped interview was 200 pages long, and it was not until page 196 that Mr. Barker allegedly confessed after steadfastly resisting the pressure from the Detectives -- and only after the eight minute gap in the video tape.  The only evidence of what transpired during this gap was the self serving testimony of the detective that nothing coercive occurred.  If so, there was no reason to shut off the video tape.

**B.    MR. BARKER'S RIGHT TO DUE PROCESS AND A JURY OF HIS PEERS WAS VIOLATED WHEN THE COURT DENIED HIS *BATSON* CHALLENGE TO THE PROSECUTOR'S USE OF PEREMPTORY CHALLENGES OF NON-WHITE JURORS.**

The Fourteenth Amendment prohibits the State prosecutor from using peremptory challenges to strike jurors solely on the grounds of race. *Batson v. Kentucky*, 476 U.S. 79 (1986). *See also Valdez v. People*, 966 P.2d 587 (Colo. 1998). The Supreme Court has stated:

> the overriding interest in eradicating discrimination from our civic institutions suffers whenever an individual is excluded from making a significant contribution to governance on account of his race.

*Johnson v. California*, 125 S.Ct. 2410, 2418 (2005).

A three-step process is employed in determining if a *Batson* violation has occurred. *Batson,* at 93-98; *See also Hernandez v. New York,* 500 U.S. 352, 358-89 (1991); *People v. Cerrone,* 854 P.2d 178, 185 (Colo. 1993); *Purkett v. Elem*, 514 U.S. 765, 768 (1995). First, the defendant must make a *prima facie* showing that a juror was excluded because of race, either through inferences or statistics. *Valdez*, at 589, 593; *Batson,* at 96-98. *See also Cerrone,* at 185, 189.  Upon this showing, the burden shifts to the prosecutor to provide a racially neutral reason.  If an explanation is provided, the court must determine by a preponderance of the evidence if the strike was the result of purposeful discrimination. *Valdez, Batson.*

The trial court's finding that there was not actual discrimination is reviewed for clear error, while the other two findings – facial validity of the prosecutor's reason and the defendant's prima facie showing –  are reviewed *de novo*.  *Valdez,* at 591*; Hernandez,* 500 U.S. at 364; *Cerrone*, 854 P.2d at 191.

In step three, the court examines the persuasiveness of the justification. *See Pauline v. Castro,* 371 F.3d 1083, 1090 (9th Cir. 2004) ("[I]t does not matter that prosecutor might have had good reasons,... [w]hat matters is the real reason they were stricken."), *quoted with approval in Johnson v. California, supra.* The Supreme Court has recently rejected the notion that "any facially neutral reason sufficed to answer a *Batson* challenge." *Miller-El v. Dretke*, 545 U.S. 2331, 239 (2005). The Court looked behind the prosecutor's stated reason and reviewed the questions and answers of the stricken jurors and compared them to those who were not stricken in determining the validity of the "race-neutral" explanations provided by the prosecutor. The *Miller-El* Court appears to retreat from an earlier holding in *Purkett v. Elem, supra,* 514 U.S. at 768-69 (the prosecutor's explanation need not be "persuasive or even plausible"):

> A *Batson* challenge does not call for a mere exercise in thinking up any rational basis. If the stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court can imagine a reason that might not have been shown up as false.

*Miller-El v. Dretke*, *supra* at 264.

What is clear from *Miller-El* is that a court cannot simply accept at face value the prosecutor's stated "racially neutral" reason, but rather is obligated to look behind it. The *Miller-El* Court concluded that "[t]he prosecutor's chosen race-neutral reasons for the strikes do not hold up and are so far at odds with the

evidence that pretext is the fair conclusion, indicating the very discrimination the explanations were meant to deny." *Miller-El*, at 264.  It is within these parameters that this Court must determine if the "racially-neutral" explanation holds water.

Here, the jury pool ended up without any African-Americans, indeed without any minority representation.   The prosecution used four peremptory challenges to dismiss two African American jurors, and at two Hispanic jurors.   In this case, the prosecution never articulated a race neutral reason for

Mr. Barker is African American. Mr. Barker has thus met the initial prong of the *Batson* test– that the person struck from the jury is a member of a cognizable racial group.    The reason why the state courts rejected Mr. Barker's *Batson* issue is that his trial counsel did not raise the issue until the prosecution's fourth preemtory challenge of a minority member of the jury panel.   However, a single peremptory challenge is sufficient to establish a *prima facie* case if, as a result of that peremptory challenge, no  members of a cognizable racial group remain on the jury.  In *United States v. Chalan,* the 10th Circuit explained the basis for this rule:

> [Peremptory challenges] ...  are subject to abuse in part because normally the Government need not state the reason for its action.  If all of the jurors of defendant's race are excluded from the jury, we believe that there is a substantial risk that the Government excluded the jurors because of their race.  Our holding helps to avert that risk by requiring the Government to explain the reasons for its challenges when no members of a defendant's race are left on the jury.

*United States v. Chalan*, 812 F.2d 1302, 1314 (10th Cir. 1987), *quoted in Portley,*

857 P.2d at 463. This ruling was affirmed in *Valdez,* 966 P.2d at 594 and *People v. Baker,* 924 P.2d 1186, 1189 (Colo. App. 1996).

The Court cannot simply accept the prosecutor's stated reason, but must look at the facts to see if the stated reason holds up. *Miller-El.* After *Miller-El,* there is no continuing validity of such cases as *Hernandez v. New York*, 500 U.S. at 359.[2]  In Mr. Barker's case, *no* race neutral explanation was offered, and the state courts below allowed the prosecution to get away with this.  This was contrary to clearly established federal law.

Although a defendant is not required to show prejudice, the damage from this behavior is pervasive.   As the Court in *Miller-El* noted, the United States Supreme Court recognized long ago that racial discrimination in jury selection prejudices the right to a fair trial. *Miller-El,* at 2323; *See Strauder v. West Virginia,* 100 U.S. 303, 309 (1880).   The prosecutor's use of peremptories to strike the African-American and Hispanic jurors violated Mr. Barker's constitutional rights to due process, and to a fair trial and an impartial jury of his peers, and his right to have a trial not infected by discrimination against minorities in jury selection.  Mr. Barker is therefore entitled to a new trial.  U.S. Const. amends. VI, XIV.

In a single sentence, the Court of Appeals summarily disposed of this important issue by stating that "we conclude the trial court did not err in failing to

---

[2]"Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral..."

address [Mr. Barker's] objections to the four jurors excused by the prosecution." The only excuse offered by the prosecution for systematically eliminating all the minority members from the jury was only directed at Juror T, and the excuse was that he was argumentative, had bad experiences with police officers and "his physical demeanor."  The "physical demeanor" excuse is just another way to discriminate on the basis of race (an African American man reacting with defensiveness to a Caucasian prosecutor who is challenging his understandable reluctance to take everything a police officer says and does at face value without argument).  However, no record was made that this juror could not be fair or impartial or was refusing to credit any testimony from the police.  There was no showing that Juror T could not be impartial.  Juror T should have been treated the same way as Juror W.  Ms. W's husband was a retired police officer, and the trial court refused Mr. Barker's challenge for cause because there was no record made that Juror W could not be fair or impartial just because she was married to a retired police officer.

The U.S. Supreme Court recognized long ago that racial discrimination in jury selection prejudices the right to a fair trial. *Miller-El*, at 236-7; *Strauder v. West Virginia,* 100 U.S. 303, 309 (1880).   There is prejudice because, had he succeeded – a fact that cannot be determined absent an evidentiary hearing – he would have received a new trial at which the jury selection process could have

comported with constitutional and statutory requirements. *See e.g. Washington v. People*, 186 P.3d 594 (Colo. 2007) (affirming murder conviction, but reversing this Court on the standard it used in gauging the statistical significance of underrepresentation of minorities in jury venire in Arapahoe County), which demonstrates that the underlying issue requires an evidentiary hearing. *See also e.g. Jackman v. United States*, 46 F.3d 1240 (2nd Cir. 1995); U.S. Const. amends. VI, XIV.

**C.   THE STATE COURTS DENIED MR. BARKER HIS SIXTH AMENDMENT RIGHT TO POST CONVICTION COUNSEL AND FOR EFFECTIVE ASSISTANCE OF TRIAL COUNSEL**

Mr. Barker submits that he was entitled to appointment of Counsel as both a Sixth Amendment Right and pursuant to Colorado statutes when he filed his post trial motion on November 8, 2004, and this motion was ignored in its entirety.   In *Coleman v. Thompson,* the United States Supreme Court stated the general rule that "there is no [Sixth Amendment] right to counsel in state collateral proceedings."  501 U.S. 722, 755 (1991).   But the Supreme Court then recognized that there might be an exception to that general rule when "state collateral review is the first place a prisoner can present a challenge to his conviction." *Id*. The following paragraphs will demonstrate that there is such an exception, in the specific circumstances of this case, under *Douglas v. California,* 372 U. S. 353 (1963), and *Halbert v. Michigan,* 545 U.S. 605 (2005).

In the *Douglas* case*,* the United States Supreme Court held that under the Due Process and Equal Protection Clauses of the Fourteenth Amendment, an indigent defendant had a right to appointed counsel in a first appeal as of right, *Douglas, supra* at 355-58 --even when the appellate court already was required by state law to appoint counsel unless its independent investigation of the record indicated that "such appointment would be of no value to either the defendant or the court." *Id.* at 354-55. In so holding, the United States Supreme Court emphasized the "benefit of counsel's examination into the record, research of the law, and marshalling of arguments," and the unfairness of providing that benefit only to those defendants who were wealthy enough to afford it. *Id.* at 355-56, 358.

In *Ross v. Moffitt,* 417 U.S. 600, 614-18 (1974), the Supreme Court held that an indigent defendant, who had been represented by counsel on direct appeals in the state court of appeals, had no federal right to appointed counsel to pursue further review in either the state supreme court or this Court. That holding was based primarily on the Supreme Court's conclusion that after the first stage of review, the defendant would have, "at the very least, a transcript or other record of trial proceedings, a brief on his behalf in the Court of Appeals setting forth his claims of error, and in many cases an opinion by the Court of Appeals" --materials that "would appear to provide the [state supreme court] with an adequate basis for

its decision to grant or deny review." *Id.* at 615.  However, this assumption does not bear true in Colorado.  Indigent defendants are not given access to their transcripts in order to prepare their post conviction motions.  In the case at bar, Mr. Barker expressly requested access to his transcripts, and the District Court denied his motion because of the "tremendous expense."

The defendant in *Halbert* was convicted on a plea of nolo contendere. He then requested that counsel be appointed to represent him in applying for leave to appeal, but the Michigan courts denied that request. 545 U.S. at 609. The Supreme Court, however, held that the Fourteenth Amendment required "the appointment of counsel for [Michigan] defendants, convicted on their pleas, who [sought] access to first-tier review" --even though such review was discretionary, rather than of right. *Id.* at 610. This holding was based on the Supreme Court's conclusion that *Douglas,* rather than *Ross,* provided "the controlling instruction," 545 U.S. at 616-17.  This is the backdrop of the US Supreme Court's most recent pronouncement on entitlement to post conviction counsel in *Martinez v. Ryan,* 2012 WL 912950 (March 20, 2012).

In *People v. Duran*, 757 P.2d 1096, 1097 (Colo. App. 1988) and *People v. Hickey*, 914 P.2d 377, 379 (Colo. App. 1995), the Colorado Court of Appeals held that the statutory right to counsel is "tenuously premised on an interpretation of the statutes creating and governing the office of the state public defender and requiring

that office to prosecute post-conviction remedies which have arguable merit."

*Hickey, supra,* 914 P.2d at 379 (internal citations omitted).  Specifically, the *Duran*

court relied on CRS 21-1-103 and 104.[3]   Sections 21-1-104(1)(b) and 21-2-

104(2)(b) provide that a state public defender or alternate defense counsel shall

"[p]rosecute any appeals or other remedies before or after conviction that the state

public defender or alternate defense counsel considers to be in the interest

of justice." The *Duran* Court read "other remedies" to include Rule 35(c) motions

that the public defender (or now, the alternate defense counsel) – not the District

Court – found to have arguable merit. *Duran, supra,* 757 P.2d at 1097; *Silva v.*

*People,* 156 P.3d 1164, 1168 (Colo. 2007)

In *Silva*, the Colorado Supreme Court determined that an indigent defendant

may be denied post-conviction counsel only if one of two circumstances is present:

(1) the District Court makes a finding that the post-conviction motion is "wholly

unfounded," or (2)  the public defender/alternate defense counsel determines that

the post-conviction motion "lacks merit."  *Silva, supra,* 156 P.3d at 1168.   In the

case at bar, the state District Court did not make a finding that Mr. Barker's pro se

3(5c) motion was "wholly unfounded," instead the District Court summarily

concluded that there were insufficient factual allegations to substantiate his claims

---

[3] Since that time, Article 2 was enacted, creating the Office of the Alternate
Defense Counsel, and the same reasoning would apply to appointment of alternate
defense counsel.

of ineffective assistance of counsel.

"Wholly unfounded" means frivolous, and this is the type of determination that can be made from the face of the motion.  Therefore, the District Court may not refuse to appoint post-conviction counsel unless the motion is frivolous.  For example, motions that are clearly time barred and provide no justifiable excuse/ excusable neglect argument are wholly unfounded.  Likewise, motions that attempt to reargue the issues raised on direct appeal are wholly unfounded.  While it is true that Mr. Barker did attempt to relitigate two issues that were resolved on direct appeal (the voluntariness of his confessions and the prosecution's preemptory jury challenges), the rest of Mr. Barker's claims were legitimate post-conviction claims – especially his claim of ineffective assistance of trial defense counsel.  As set forth below, these claims of ineffective assistance were not frivolous and thus not "wholly unfounded."

The problem with pro se motions is that the typical pro se Defendant does not understand what they have to do in order to obtain appointment of counsel and get an evidentiary hearing.  They go to the inadequate prison library (that has missing volumes, and little updates or upkeep) read whatever case law they can find, find cases that match what they think went wrong at their trials (even if it is from the 19th century), and then copy the blurbs from this case law into their pro se motions.  What they rarely understand is that they need to set forth detailed factual

allegations (from their own cases) in support of each allegation, rather than just copy the language from the case law.  The result is that these lengthy, rambling and difficult to read pro se Rule 35(c) motions are long on copied law, but short on specific facts, and the ultimate result is that the motions are denied for failure to state a claim, and then the pro se Defendant is forever barred from filing a correctly pled post conviction motion.  This results in a great injustice, especially as here, where the uneducated Defendant is serving consecutive life sentences for crimes committed when he was a teenager.

The practical result is appeals to this court, with or without counsel, and then endless relitigation in the District Courts – all of which could be avoided if the District Courts would just appoint conflict free counsel in serious felony cases, when the pro se Defendant requests it, rather than finding ways to deny appointment of counsel, which generates the endless litigation.  It would save on ADC and judicial resources to just appoint counsel in the first place, rather than engage in all this endless litigation in an attempt to avoid appointing counsel.

These are the issues that the US Supreme Court struggled with in *Martinez v. Ryan,* 2012 WL 912950 (March 20, 2012).  In this case, Martinez did not have effective assistance of post conviction counsel, and Arizona, like Colorado, only permits a defendant to raise ineffective assistance of trial counsel in a post conviction motion, not in a direct appeal (when an indigent defendant has an

absolute right to assistance of counsel).

The question presented in *Martinez* was whether criminal defendants ever have a right to the effective assistance of counsel in collateral state post-conviction proceedings. Although the Justices have repeatedly drawn a bright line for these purposes between direct appeals (in which the right to counsel – and to the effective assistance thereof – is well-established) and collateral challenges (in which no absolute right to counsel has been recognized), they have reserved whether this distinction would hold when "state collateral review is the first place a prisoner can present a challenge to his conviction." Answering this question poses a choice between two equally unappealing alternatives.  On one hand, in states (like Colorado) that require criminal defendants to challenge the effectiveness of trial counsel in state post-conviction proceedings (e.g. *Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003), such collateral review is the first chance to raise a constitutional objection—and may thus constitute the "first tier" of post-conviction review, *i.e.* that for which counsel has typically been required.  On the other hand, recognizing a general right to counsel in collateral state post-conviction proceedings whenever a claim could not have been raised on direct appeal would have dramatic consequences both with respect to the timing and cost of collateral state post-conviction review (not to mention that it would arguably be inconsistent with the Court's 1991 decision in *Coleman v. Thompson.*   As our Colorado

Attorney General Appellate Division now suggests at every available opportunity in briefing and at Oral Arguments of post conviction cases, _ such a right, if it existed, would presumably require not just one, but repeated (and iterative) avenues for collateral state post-conviction review, with each new proceeding allowing the defendant to challenge the effectiveness of his counsel in the previous proceeding.

Writing for the majority in *Martinez*, Justice Kennedy chose a third option: none of the above.   Although Kennedy noted that the Supreme Court had left open in *Coleman* whether there might be an "exception to the constitutional rule that there is no right to counsel in collateral proceedings," he concluded that "[t]his is not the case . . . to resolve whether that exception exists as a constitutional matter." *Martinez v. Ryan* at *5.  Instead, the majority opinion (joined without comment by Chief Justice Roberts and Justice Alito, along with Justices Ginsburg, Breyer, Sotomayor, and Kagan) concluded that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.*  In other words, without specifically holding that defendants in Martinez's position have a freestanding constitutional right to the effective assistance of counsel in collateral post-conviction proceedings, the Court held that the *in*effectiveness of a defendant's state *post-conviction* counsel may provide cause in a *federal* habeas

proceeding to excuse the defendant's failure to challenge the ineffectiveness of his *trial* counsel.

As a result, defendants such as Mr. Barker will not have a new right to counsel (or the effective assistance thereof) in state post-conviction proceedings, but he also will not necessarily be barred from raising for the first time in his *federal* post-conviction proceeding the argument that his trial counsel was ineffective. Instead, the majority split the difference. As Justice Kennedy explained,

> when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*

*Martinez v. Ryan* at *8.   The ineffectiveness-of-trial-counsel claim must be "substantial," but so long as it is, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id at *11*.

For Mr. Barker, the logical corollary to *Ryan v. Martinez* is that a

"procedural default" should not bar a subsequent state law claim, and he should also be entitled to file a subsequent Rule 35(c) motion, this time with the assistance of conflict free post conviction counsel so that he can properly advance his post conviction claims, and properly plead his claims so as to be entitled to an evidentiary hearing. In other words, *Martinez v. Ryan* should provide the exception to Rule 35(c)(3)(VII).

The US Constitution guarantees to the accused in a criminal case the right to effective assistance of counsel. U.S. Const., amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668 (1984). The state District Court is required to grant an evidentiary hearing on a Crim. P. 35(c) motion unless the motion, files, and record establish that the defendant is not entitled to relief. *Ardolino v. People*, 69 P.3d 73 (Colo. 2003) (reversing district court's refusal to hold an evidentiary hearing on Rule 35(c) motion alleging ineffective assistance of counsel); *People v. Simpson*, 69 P.3d 79, 81 (Colo. 2003) (reversing district court's refusal to hold an evidentiary hearing on Rule 35(c) motion alleging that absence of attorney made plea involuntary); *People v. Nguyen*, 80 P.3d 903 (Colo. App. 2003) (Reversing district court's refusal to give a defendant an evidentiary hearing on his post-conviction motion that his plea was involuntary); *White v. Denver District Court*, 766 P.2d 632, 636 (Colo. 1988) (reversing district court's denial refusal to hold an

evidentiary hearing  on habeas motion challenging procedures used to revoke parole).

It is important to note that even though the Defendant has the burden of proof, by a preponderance of the evidence, to prove ineffective assistance of counsel, he does not bear the burden of disproving that counsel's actions were motivated by strategy.  The District Court did not cite to any case (and none exists) that Mr. Barker had the burden to rebut every suggestion that trial defense counsel's actions were motivated by strategy when there is no evidentiary hearing, and thus no testimony as to what the "strategy" was except to insist that the Defendant and trial counsel must have disagreed over strategy.

Instead, the burden must shift to the People to present evidence that trial defense counsel had a strategy and to prove, by a preponderance of the evidence, what that strategy was.  *See, People v. Hrapski*, 718 P.2d 1050, 1056 (Colo. 1986) (when the defendant in a collateral attack in an independent proceeding makes a prima facie showing that his conviction is invalid, the burden shifts to the prosecution to show the validity of the judgment by a preponderance of the evidence).   However, the District Court did not even require the DA to respond to Mr. Barker's pro se 35c motion.  The District Court had to do more than just conclude that trial defense counsel that "must have" had a "strategy."  There must be actual testimony of what that "strategy" was in order to require that Mr. Barker

demonstrate that the "strategy" was unreasonable as part of his burden of proof on the 35c motion.  This cannot be done without an evidentiary hearing.

The pro se Mr. Barker raised numerous issues of ineffective assistance of counsel that cannot be resolved without an evidentiary hearing, but four of these issues in particular merit discussion:   (1)   ineffective assistance of counsel for failure to engage an expert witness; (2) ineffective assistance of counsel for failure to properly raise and preserve Mr. Barker's Constitutional right to confrontation of witnesses; (3) ineffective assistance of counsel for failure to object to the joinder of the two unrelated cases; and (4) ineffective assistance of counsel for requesting a continuance rather than filing a motion to dismiss for violation of his right to a speedy trial:

(1) Ineffective assistance for failure to engage an expert witness to analyze the tape recording

Mr. Barker's voice was identified as the voice on the tape recording, and Mr. Barker alleged that it was ineffective assistance of counsel to fail to engage an expert witness to analyze the tape recording and render an expert opinion as to whether the voice on the recording belonged to Mr. Barker.  Mr. Barker denies that he called this cab.  From the record alone, it was impossible for the District Court to discern whether counsel's alleged failure to consult or employ a voice identification expert was sound trial strategy or an otherwise professionally reasonable decision.  Absent testimony from trial counsel to explain his decision

not to employ such an expert, or until testimony is presented concerning the requisite standard of care for a criminal attorney, no court can conclude as a matter of law whether the omission was within the range of professionally competent assistance. *See e.g.*, *Lawrence v. Armontrout*, 900 F.2d 127, 130 (8th Cir. 1990) (Trial counsel owed his client a duty to pursue his alibi, defense and to investigate all witnesses who allegedly possessed knowledge concerning defendants guilt or innocence.

(2) Ineffective assistance of counsel for failure to properly raise and preserve Mr. Barker's Constitutional right to confrontation of witnesses

Prior to trial, Mr. Barker's trial counsel was required to file notice, pursuant to CRS 16–3–309(5), the Sixth Amendment of the United States Constitution, and Article II, Section 16 of the Colorado Constitution, that any employees and technicians of any criminalistics laboratory be present and testify at trial, and that Mr. Barker objected to the admission of any evidence of the testing results of any criminalistics laboratory at trial without the personal testimony of the appropriate employees or technicians.

However, trial counsel failed to do this, and as a result, Mr. Barker lost his appeal. The Court of Appeals concluded that the lab report was prepared for an ongoing criminal investigation and in anticipation of criminal prosecution. Thus, it constituted testimonial hearsay. However, trial defense counsel failed to comply with the statutory requirement by requesting that the two detectives mentioned in

the lab report testify at his trial. Therefore, the Court of Appeals concluded that Mr. Barker waived his right to confront these two detectives mentioned in the lab report.

In his Rule 35(c) motion, Mr. Barker raised the issue that this was ineffective assistance. From the record alone, it was impossible for the state District Court to discern whether counsel's alleged failure to properly preserve this issue was sound trial strategy or an otherwise professionally reasonable decision. Defense counsel obviously knew how to do this because he properly preserved the evidence with respect to other laboratory testing. Absent testimony from trial counsel to explain his decision not to comply with CRS 16–3–309(5), or until testimony is presented concerning the requisite standard of care for a criminal attorney, no court can conclude as a matter of law whether the omission was within the range of professionally competent assistance.

(3) Ineffective assistance of counsel for failure to object to the joinder of the two unrelated cases.

Mr. Barker was charged with two different and unrelated homicides. They were originally charged under two different District Court case numbers, but then were consolidated without objection by trial defense counsel. Pursuant to Crim Rule 14, if it appears that an accused is prejudiced by a joinder of offenses in any indictment, a trial court may order a separate trial of counts or provide whatever other relief justice requires. Colorado cases have held that to obtain severance

34

under Rule 14, the accused has the burden to demonstrate that he will suffer actual prejudice by joinder of the counts. The accused must make a "convincing showing" that he has both "important testimony" to provide concerning some counts and a strong need to refrain from testifying on the other counts. *See, e.g., People* v. *Guffie,* 749 P.2d 976,982-983 (Colo. App. 1987).

Under the Due Process Clauses, Mr. Barker was presumed innocent of all counts in both homicide cases.  *See People* v. *Hill,* 512 P.2d 257 (1973); *U.S. Const.,* amends. V, XIV; *Colo. Const.,* art. II, §25.  Mr. Barker was also guaranteed the right to remain silent with respect to all counts and cases. U.S. *Const.,* amends. V, XIV; *Colo. Const.,* art. II, §§18, 25. Mr. Barker enjoyed the fundamental constitutional right to testify with respect to either case.  *See People v. Curtis,* 681 P.2d 504 (Colo. 1984).  Whether Mr. Barker determined to waive his right to remain silent and to come forward to testify and offer any explanation on any count and in either case was "an important tactical decision as well as a matter of constitutional right." *Brooks* v. *Tennessee,* 406 U.S. 605, 612 (1972); *see People* v. *Curtis,* 681 P.2d 504 (Colo. 1984).

From the record alone, it was impossible for the state District Court to discern whether trial counsel's alleged failure to move to sever was sound trial strategy or an otherwise professionally reasonable decision.  Absent testimony from trial counsel to explain his decision not to not come forward with the

"important testimony" requirement, or until testimony is presented concerning the requisite standard of care for a criminal attorney, no court can conclude as a matter of law whether the omission was within the range of professionally competent assistance.

(4) Ineffective assistance of counsel for requesting a continuance rather than filing a motion to dismiss for violation of his right to a speedy trial

The speedy trial statute, CRS 18-1-405, provides that a defendant must be brought to trial within six months after arraignment. CRS 18-1-405(1).  A trial court has no discretion to extend the six-month period unless an exclusion or exception to the speedy trial statute applies. *People v. Gallegos,* 946 P.2d 946,949 (Colo. 1997).  One recognized exclusion to the speedy trial calculation is "any delay caused at the instance of the defendant."  CRS 18-1-405(6)(ij).  Another recognized exception to the six-month speedy trial calculation is if "the defendant requests and is granted a continuance for trial."  CRS 18-1-405(3).  Another exception to the six-month speedy trial calculation is if the Defendant accepts a trial date outside of the speedy trial date, without objection.  CRS 18-1-405(5.1). The period of time caused by a defendant's delay is excluded from the statutory time calculation, whereas a defendant's request for a continuance or acceptance of a trial date outside of the six-month speedy trial calculation extends the statutory period for an additional six months.  18-1-405(3), (6);  *People v. Duncan,* 31 P.3d 874, 876 (Colo. 2001).

36

Under section 18-1-405(3), a continuance is chargeable to a defendant when it is 'caused by the affirmative actions of the defendant, or by his express consent to the continuance, or by other affirmative action by defendant evincing his consent." *People v. Rocha,* 872 P.2d 1285, 1288 (Colo. App. 1993) (citing *People v. Scales,* 763 P.2d 1045 (Colo. 1988)). "Continuances made necessary because of the substitution of counsel may, depending upon the particular circumstances of the case, be chargeable to the defendant." *Scales,* 763 P.2d at 1048; *see Duncan,* 31 P.3d at 878. [F]our factors should be considered when deciding whether a delay or continuance can be charged to the defendant for speedy trial purposes: (1) whether actions by the defendant enhanced the need for a continuance; (2) whether failure to order an extension of time would provide the defendant with a claim for inadequate assistance of counsel; (3) whether defense counsel claims that he cannot try the case within the speedy trial time frames; and (4) whether the defendant who is recalcitrant was counseled and appeared to understand the need for a continuance. *People ex rel Gallagher v. District Court,* 933 P.2d 583, 587 (Colo. 1997).

In certain circumstances a reasonable delay may be required to protect a defendant's fundamental constitutional right to effective assistance of counsel. *See Id.* at 588; *see also Scales,* 763 P.2d at *1048; Rocha,* 872 P.2d at 1288. "In order to reach such a conclusion, however, the record must support the trial court's

conclusion that the delay in derogation of the defendant's statutory right to a speedy trial was *necessary* to protect his constitutional right to effective assistance of counsel." *Gallagher,* 933 P.2d at 588-89. "The determination of whether a delay caused by substitution of counsel is properly chargeable to the defendant is essentially an *ad hoc* inquiry." *Scales,* 763 P.2d at 1048.

The burden of compliance with the speedy trial statute is on the prosecution and the trial court -- *not* the Defendant. *Marquez v. District Court,* 613 P.2d 1302, 1303-04 (Colo. 1980). "The burden includes making a record sufficient for an appellate court to determine statutory compliance." *Id.* at 57-58,613 P.2d at 1304. "Under circumstances where no statutory exception or constitutional right justifies a delay, and the defendant has taken no action to effectuate or consent to a delay, noncompliance with the speedy trial requirements results in dismissal of the charges against the defendant." *People v. Arledge,* 938 P.2d 160, 165 (Colo. 1997).

In the case at bar, trial defense counsel was forced to seek a continuance on May 5, 2004 due to the prosecution's late disclosure of evidence. This forced the defense to waive Mr. Barker's speedy trial rights over his objection. However, trial defense counsel never made the following arguments or record: (1) the delay was attributable to the prosecution not the defense because it was the prosecution that delayed in turning order the evidence. The facts were there to support this

argument because defense counsel had previously moved to dismiss as a sanction for the discovery violation.  The burden of compliance with the speedy trial statute is on the prosecution and the trial court -- *not* the Defendant.  *Marquez v. District Court,* 613 P.2d 1302, 1303-04 (Colo. 1980).  Therefore, trial defense counsel should have argued that  (2)  No record was made regarding whether trial defense counsel needed an entire three months beyond the speedy trial date in order to prepare and provide effective assistance of counsel.  When the delay is necessary in order to protect the defendant's constitutional right to effective assistance of counsel, it just is not true that the defendant is forced into choosing whether to forego effective assistance of counsel or be forced into accepting an extension of the speedy trial date by an entire six months.  *People ex rel Gallagher v. District Court,* 933 P.2d 583, 587 (Colo. 1997).  The amount of the delay is only that which is required in order to protect the defendant's Sixth Amendment right to effective assistance of counsel.

From the record alone, it was impossible for the state District Court to discern whether trial counsel's alleged failure to move to dismiss for violation of Mr. Barker's right to a speedy trial was sound trial strategy or an otherwise professionally reasonable decision or was based simply on counsel's ignorance of the case law – he seems to think that he has the right to force Mr. Barker to waive speedy trial if he needs additional time to prepare and did not realize that if he is

forced into the position by the prosecution, then he can still move to dismiss. Absent testimony from trial counsel to explain his decision not to file a motion to dismiss or until testimony is presented concerning the requisite standard of care for a criminal attorney, no court can conclude as a matter of law whether the omission was within the range of professionally competent assistance.

Therefore, it violated Mr. Barker's Sixth Amendment rights to deny him appointment of post conviction counsel, and then deny his post conviction motion for ineffective assistance of counsel without an evidentiary hearing.  Mr. Barker was prejudiced by the ineffective assistance of his trial defense counsel, and in denying these claims, the state courts' actions were contrary to clearly established federal precedent.

## CONCLUSION

For the reasons set forth above, Mr. Barker respectfully asks this Court to grant his application and order the Respondents to release or retry him.

Dated:          March 23, 2013

Respectfully Submitted,

s/ Alison L. Ruttenberg

_____

Alison L. Ruttenberg # 17497
PO Box 19857
Boulder, Colorado 80308
(720) 317-3834(Telephone)
(888) 573-3153 (Fax)
Ruttenberg@me.com

40

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2015, I served true copies of the foregoing Amended Petition for Writ of Habeas Corpus, by U.S. mail, postage prepaid, on Colorado Attorney General John Suthers, 1525 Sherman Street, Denver, Colorado 80203

s/ Alison Ruttenberg

_____

Alison L. Ruttenberg # 17497
PO Box 19857
Boulder, Colorado 80308
(720) 317-3834(Telephone)
(888) 573-3153 (Fax)
Ruttenberg@me.com